T.C. Memo. 1996-430

UNITED STATES TAX COURT

GEORGE W. AND MARGARET L. GAGNON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8834-95.                    Filed September 24, 1996.

George W. Gagnon, pro se.

<u>Christal W. Hillstead</u>, for respondent.


MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

By notice of deficiency dated March 16, 1995, respondent
determined deficiencies in petitioners' Federal income taxes for
the taxable years 1991, 1992, and 1993 in the respective amounts

---

[1]  Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the years in issue.  Rule
references are to the Tax Court Rules of Practice and Procedure.

of $4,604, $5,558, and $5,558.  At the time the petition was filed, petitioners resided in Des Moines, Washington.

The issue is whether petitioners are entitled to deduct losses from their activities with respect to Gull Cottage Nursery during the years 1991, 1992, and 1993.

The facts may be summarized as follows.  In 1989, and during the years in issue, petitioner George W. Gagnon (Mr. Gagnon or petitioner) was employed full time as a salesman for Costco Wholesale, and petitioner Margaret L. Gagnon (Mrs. Gagnon) was employed full time as a secretary for the U.S. Department of Transportation.  They resided in Des Moines, Washington, a suburb of Seattle, Washington.

During 1989, petitioners were looking for a place to which they ultimately would retire and went to Long Beach, Washington. Long Beach, Washington, is located approximately 160 miles south of Des Moines, Washington, on the Pacific Ocean.  Petitioners purchased a 50 foot by 100 foot lot with a two bedroom cottage located at 509 North Oregon Street in Long Beach (the Oregon Street property).  Shortly thereafter petitioners purchased a 100 foot by 100 foot lot (the Sixth Street property), across the street from the Oregon Street property.  The Sixth Street property improvements included a house that was not inhabitable and a barn.  Petitioners paid $30,000 for the Sixth Street property and approximately $40,000 for the Oregon Street

property.[2]  Both properties are three blocks from the Pacific

Ocean.

Mr. Gagnon conceived the idea that he could make some money

by starting a nursery for plants in Long Beach.  He obtained a

business license using the name Gull Cottage Nursery.  He started

by raising potted tulips and daffodils.  Mr. Gagnon believed that

the cost of the bulbs and pots would be approximately $1.47 each,

and he could sell the mature plants in the spring for $4 each to

grocery stores.  During 1991, he sold approximately 200 to 300

bulbs.  In 1992, he bought bulbs for $3,500 and set out 2,000

pots.  During this time he read the Bulb Forcer's Manual by an

unnamed professor at the University of North Carolina, and began

corresponding with the gentleman.  Petitioner then determined

that he would have to plant 5,000 pots to make a "maximum

profit".  He realized that he could not "handle" 5,000 pots.

Petitioner ceased potting bulbs after 1992.

_____

[2]   Mr. Gagnon testified that they had approximately $72,000
invested in the Long Beach properties.  They paid $40,000 for the
Oregon Street property and made substantial improvements to the
cottage, including new windows and doors, a stove, a
refrigerator, and fencing around the property.

In addition, petitioner bought some bushes and trees from wholesale dealers, and held them for sale on the Sixth Street property while they matured.  If someone wanted to buy a tree or bush during the week, he or she would tell a neighbor of petitioner, take it, and petitioner would send the buyer a bill. The record does not indicate the specifics of this aspect of the nursery activity.

Petitioners drove to Long Beach virtually every weekend and holiday.  They substantially renovated the cottage on the Oregon Street property in which they stayed.  While Mr. Gagnon was occupied on the weekends with the nursery activity at least during the bulb potting season, Mrs. Gagnon apparently was not active with the nursery activity.

The following items of income and expenses have been stipulated as incurred with respect to the Long Beach properties and the nursery activity:

|                          | 1990[1] | 1991    | 1992    | 1993    |
|--------------------------|---------|---------|---------|---------|
| Gross Sales              | $1,547  | $5,427  | $5,594  | $7,175  |
| Cost of Goods Sold       |         | 5,501   | 4,416   | 6,079   |
| Income                   | 152     | (74)    | 1,178   | 1,096   |
| Expenses:                |         |         |         |         |
| Advertising              |         | 122     | 143     | 143     |
| Car & Truck              |         | 5,010   | 5,214   | 5,859   |
| Depreciation             |         | 4,632   | 2,722   | 3,625   |
| Insurance                |         | 308     | 475     | 260     |
| Interest - Mortgage      |         | 1,312   | 2,859   | -0-     |
| Interest - Other         |         | 3,370   | 2,456   | 2,144   |
| Office Expense           |         | 135     | 75      | 283     |
| Legal and Professional Fees |      | 250     | 311     | 425     |
| Repairs/Maintenance      |         | -0-     | -0-     | 9       |
| Supplies                 |         | 990     | -0-     | 2,090   |
| Taxes/Licenses           |         | 911     | 1,306   | 670     |
| Meals/Entertainment      |         | 3,042   | 3,068   | 3,302   |
| Utilities                |         | 1,499   | 2,201   | 2,029   |
| Other Expenses           |         | 677     | 692     | 658     |
| Equipment Rental         |         | -0-     | 127     | 101     |
| Total                    |         | 22,258  | 21,649  | 21,598  |
| Loss                     | 19,495  | [2]22,184 | [2]20,471 | [2]20,502 |

[1] The record does not contain a detail of the expenses for 1990.  We assume that they are generically the same as those incurred in the later years.

[2] We recognize that these amounts do not correspond with the losses petitioners claimed on their 1991, 1992, and 1993 Federal income tax returns.  This discrepancy, however, is not material to our decision.

Petitioner enjoys growing plants and working in a garden. He is not a horticulturist and had no experience in the nursery business.  His concept of an activity making a profit did not include the cost of land and other indirect costs.  In entering into the nursery activity, petitioner made no financial studies of the business, other than he thought he could sell the potted plants for $4 each, and that his cost would be $1.47.

Petitioner did not have a separate bank account for the nursery activity. However, he kept records of income and expenses in journals for each year. These journals reveal that petitioner, inter alia, treated the following items as related to the nursery activity: Car insurance, cable television fees, local and cellular telephone charges, all utility costs, taxes and repairs on the Oregon Street and Sixth Street properties, automobile club dues, tools (such as router bits and scroll saws), local newspapers, etc. In computing the car and truck expenses petitioner kept mileage records and used the standard mileage figures for the years in question. Virtually all of the mileage was incurred in traveling to and from Long Beach. Petitioner computed his meal expenses by taking the number of days he was at Long Beach and multiplying that amount by $26. Petitioners did not deduct meal expenses for Mrs. Gagnon because "she's not a hard worker."

On their joint Federal income tax returns for 1991, 1992, and 1993, petitioners deducted losses with respect to the nursery activity in the respective amounts of $16,464, $19,857, and $19,842. For the taxable year 1991, petitioners filed an amended return claiming an additional loss of $5,260 based on expenses not originally claimed. This primarily consisted of car and truck expenses not originally claimed. On examination respondent disallowed the loss deductions for all the years in issue.

Section 162(a) allows taxpayers to deduct the ordinary and necessary expenses of carrying on a trade or business. Where a taxpayer conducts an activity not as a trade or business, section 183 allows deductions generally to the extent the activity generates gross income. To be engaged in a trade or business within the meaning of section 162, "the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

In determining whether an activity is engaged in for profit, the taxpayer must show an actual and honest objective of making a profit. Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The determination whether petitioner had an actual and honest objective of making a profit requires an examination of all the surrounding facts and circumstances of the case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. We give greater weight to the objective facts than to petitioner's mere statement of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth some of the relevant factors for determining when an activity is engaged in

for profit.  No one factor is controlling.  Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Golanty v. Commissioner, supra at 426.  Such relevant factors include (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the taxpayer's history of income or loss with respect to the activity; (5) the amount of occasional profits, if any, that are earned; (6) the financial status of the taxpayer; and (7) whether elements of personal pleasure or recreation are involved.

Petitioner contends that the nursery activity was a trade or business that he operated for profit.  But, it is perfectly obvious that when all of the costs that petitioner associates with the Long Beach properties and the travel to and from that area are considered as expenses of the nursery, the venture could never produce a profit, and there could not have been an actual and honest objective of a profit.  Indeed, even if petitioner could have produced 5,000 pots of tulips (the "maximum profit"), he still would not have made a profit.[3]

In reality, however, many of the expenses that petitioner attempts to associate with the nursery are expenses of a nonbusiness activity, i.e., a second home to be used on weekends,

---

[3]  Indeed, while some of the factors listed in sec. 1.183-2(b), Income Tax Regs., may be neutral, none of those factors really favor petitioner's position.

holidays, and possibly for retirement. This is quite obvious from petitioner's testimony. Petitioners went to Long Beach in search of a second home, not to invest in a business. The idea of the nursery was an afterthought. The tail of the nursery cannot wag the dog of the second home.

Expenses associated with a vacation home are personal and nondeductible except as otherwise expressly provided in the Code. Sec. 262(a). Furthermore, section 280A(a) limits the deductions that may be allowed "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." During the years in question, petitioners used, at least, the cottage on the Oregon Street property as a residence.

It may not necessarily flow from this scenario that the nursery activity was not entered into for profit. See Hughes v. Commissioner, T.C. Memo. 1995-202. We have no question that petitioner may have devoted many arduous hours to the nursery activity. Based on the record before us, it is virtually impossible to separate the ordinary and necessary expenses of the nursery activity from the personal expenses of the second home. For example, petitioners claimed deductions for utilities and interest expenses, but we have no evidentiary basis on which to allocate these expenses between business and personal. It may be argued that, for example, the car and truck expenses are solely associated with the nursery activity. But, we simply cannot accept that there were no personal motivations in the travel to

and from Long Beach.  Business licenses and advertising expenses seem to be the only expenses that we can definitively identify as directly related to the nursery activity.

Under these circumstances, petitioners have failed to establish an actual and honest objective of making a profit from the nursery activity.  We do not have an accurate financial picture of that activity.  In litigating this case, petitioners chose this all-or-nothing approach, and they have the burden of establishing that respondent's determinations were incorrect. Rule 142(a).  Petitioners have not carried that burden.

<u>Decision will be entered</u>
<u>for respondent.</u>